Filed 8/22/24  P. v. Reyes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS MANUEL REYES,<br><br>    Defendant and Appellant. | F085744<br><br>(Super. Ct. No. 18CMS-0440)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Erin J. Radekin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Petitioner Jesus Manuel Reyes petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for attempted murder (§§ 187, subd. (a), 664). The court denied the petition following an evidentiary hearing at which the court found, beyond a reasonable doubt, that petitioner acted with intent to kill.

On appeal, petitioner contends substantial evidence does not support the court's finding that he acted with intent to kill. We reject this argument and affirm the trial court's denial of petitioner's section 1172.6 petition.

## FACTUAL BACKGROUND

The following facts are taken from the evidence at petitioner's trial, of which the court took judicial notice in relation to the section 1172.6 proceedings.[2]

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

[2] The parties stipulated that the court could review exhibit 2A from petitioner's trial.

The People asked the court to take judicial notice of the transcripts from the trial. The court declined to "read[] the entire trial transcript" and suggested the People point the court to specific passages or lines of the transcript. Thereafter, the People submitted a written request for judicial notice of specified portions of the transcript, copies of which were submitted with the People's opposition to the petition, as well as a video exhibit (exhibit 1A) and four photographic exhibits (exhibits 8, 10, 14, and 15). The court eventually granted this request and copies of these materials are contained in the record on appeal.

At the evidentiary hearing, petitioner's counsel made an oral request for judicial notice of additional trial transcripts and provided the court a handwritten note indicating the requested pages. The court granted the request but also stated, "I don't have transcripts, you parties have them, I do not." It therefore is apparent the court did not review these transcripts prior to ruling. Accordingly, we do not summarize them. We note, however, that the People, when asked, did not disagree with petitioner's counsel's "summation of what she believes the testimony was." In brief, that summation, as

2.

On March 8, 2018, petitioner was an inmate at the Kings County Jail. There, in the dayroom of one of the pods, he and another inmate were involved in an attack on a third inmate.

Deputy M. McMahon responded to the incident and observed three inmates involved in an altercation. One inmate was lying face down on the ground. Another was on top of the first inmate, with his arms around the first inmate's head and neck, appearing to choke the first inmate. The third inmate was standing to the side, reaching toward the face of the inmate on the ground. The inmate who appeared to have been choked was identified as Alejandro G.[3] The inmate doing the choking was identified as petitioner. The third inmate was identified as Marco Garcia.

The inmates were separated by law enforcement. Alejandro was bleeding. McMahon described it as "the most blood I have seen from a victim inside the jail." He had puncture wounds on his upper back right below his neck, a laceration or cut on his right eye, and cuts to the left side of his face.

Petitioner was "covered in blood" but had no injuries or open wounds.[4] His socks were bloody and the bottoms of his socks were "completely covered" in blood. He was breathing heavily and appeared fatigued.

The incident was captured on two surveillance videos, both of which were admitted into evidence, and one of which (exhibit 2A) constituted the primary evidence relied on by the trial court at the section 1172.6 evidentiary hearing. Exhibit 2A depicts an altercation lasting several minutes, in which petitioner and Garcia repeatedly beat and

reflected in her handwritten notes, is that a medical doctor opined the victim's injuries were superficial and did not require emergency medical attention.

[3] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

[4] A photograph of petitioner taken after the incident shows petitioner with blood on his chest, arms, and face, as well as a large smear of blood on the ground in the area where the fight took place.

kicked Alejandro, who was either on the ground or attempting to get away. At one point, the video depicts Garcia retrieving an object that appears to have been slid under the door of an adjacent cell, then returning and continuing to strike Alejandro. At another point, the video depicts petitioner holding Alejandro in an apparent chokehold while Garcia stands by. Eventually law enforcement personnel arrived and intervened.

## PROCEDURAL HISTORY

An information filed on May 2, 2018, charged petitioner with premeditated attempted murder. (§§ 187, subd. (a), 664; count 1.) The information further alleged a great bodily injury enhancement (§ 12022.7, subd. (a)), a deadly weapon use enhancement (§ 12022, subd. (b)(1)), and a gang enhancement (§ 186.22, subd. (b)(1)(C), (5)).

Petitioner proceeded to a jury trial. The deadly weapon use enhancement was stricken on motion by the People. Ultimately, the jury deadlocked and the court declared a mistrial.

On October 1, 2018, petitioner entered a plea of no contest to attempted murder on count 1 without admitting the premeditation allegation, and admitted the great bodily injury enhancement pursuant to section 12022.7, subdivision (a) and a gang enhancement pursuant to section 186.22, subdivision (b)(1)(C). The remaining allegations were dismissed. On February 14, 2019, petitioner was sentenced to an aggregate term of 22 years in state prison.

On April 1, 2022, petitioner filed a petition for resentencing pursuant to section 1172.6. Counsel was appointed to represent him. The People opposed the petition on the ground petitioner was the actual attempted murderer as evidenced by the trial transcripts, which petitioner stipulated constituted a factual basis for his plea. The People attached to their opposition excerpted transcripts from petitioner's trial and change of plea hearing. Petitioner filed a reply, arguing that he had stated a prima facie case. The trial court

4.

determined petitioner had made a prima facie claim for relief and set the matter for an evidentiary hearing.

The evidentiary hearing was conducted on January 30, 2023. The court stated it had reviewed exhibit 2A based on the parties' prior stipulation. Neither party offered additional evidence. Petitioner's counsel argued that the trial testimony showed the victim's injuries were superficial and one officer testified it was petitioner's codefendant, rather than petitioner, who choked the victim. The court disagreed with the latter assertion based on the video evidence. The People argued the evidence showed petitioner acted with the specific intent to kill. The People also asserted McMahon identified petitioner as the person who choked the victim. Petitioner's counsel argued the incident was merely a fight involving mutual combat and the initial aggressor was unknown.

The court ruled as follows:

"I did preside over these proceedings. Mrs. [Prosecutor], where you indicate that there is a point in the video where you see a co-defendant take a break while [petitioner] continues the attack, and then eventually joins back in, that was not part of Exhibit 2[A], that was part of a different video, I do remember it. The co-defendant appeared to stop from exhaustion and in his attempts to kicking afterwards were feeble at best, while [petitioner] continued, but that is not before me.[5] That wasn't part of Exhibit 2A. But in looking at Exhibit 2A I don't think you can say it is difficult to determine who the aggressors were.

"The video was lengthy. It shows the victim running from both [petitioner] and his coparticipant. And throughout the entire portion of the video I don't recall ever seeing the victim throw a punch. I see him curling up running away, and there being a relentless attack upon him. When you look at the video it appears to me for approximately seven minutes the beating occurs, which is an extraordinary long period of time. [Petitioner] and a second inmate are chasing the victim at the beginning of the video. The victim falls to the ground on his hands and knees, at which time

---

[5] It appears video of this conduct was part of exhibit 1A. Exhibit 1A was included in the People's written request for judicial notice, which the court granted. However, it appears the court did not review exhibit 1A in relation to the evidentiary hearing.

[petitioner] and the second inmate begin punching and kicking the victim in the head area, his ribs, with the victim trying to cover up.

"There is a fourth inmate who appears to slide an object underneath his cell door at which time the second inmate assisting [petitioner] runs over to the cell door, picks an item up off the floor, and comes back to the victim. While that inmate is obtaining the item off the floor, the victim prones out on his stomach. [Petitioner] pounced the victim's back and continues to punch the victim in the back of the head.

"A second inmate returns and begins to make stabbing motions to the victim in the neck and head area while [petitioner] is punching the victim in the back of his head. Both [petitioner] and the second inmate continue to strike the victim focusing their attack on his head and neck area. [Petitioner] then attempts to stomp on the victim's head. [Petitioner] again mounts the victim's back while continuing to punch the victim in the head, while the second inmate also stomps on the victim's head. The group then moves partially off the screen where you can see the second inmate again stomp the victim multiple times while you can see [petitioner's] arms and fists continuing to punch at the victim.

"The parties are off screen for a couple of minutes and then the camera angle changes and the victim is again mounted on the -- proned out and on his hands and knees while [petitioner] is mounted on top of them. [Petitioner] is again on his back with his arms around the victim's neck pulling upwards, and what could only be described as a choking motion. And then the second inmate comes around and again begins to assault the victim in the head area. There is a large smear of blood on the flooring covering approximately six feet. [Petitioner] does not release the victim until deputies actually appear and are standing next to him, and [petitioner's] arms are covered in the victim's blood from his elbows down to his fingertips, as well as the victim's face and upper torso being saturated in blood.

"The only description of that attack that I can see is that [petitioner] had his own separate independent intent to kill based upon, one, the coordinated effort of three inmates to attack the one.

"And two, the fact that the assault of both inmates focus[]ed on the victim's head and neck areas, which are vital areas, which stomping on, punching in, and kicking in would only result in death if they're successful in those blows.

6.

"So at this time the Court finds that the People have shown beyond a reasonable doubt that [petitioner] harbored his own separate individual intent to kill the victim in this case, and the petition for resentencing is denied."

## DISCUSSION

### A.     Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)  First, the bill narrowed the scope of the felony-murder rule.[6] (§ 189, subd. (e); accord, *People v. Arellano* (2024) 16 Cal.5th 457, 467–468.)  Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).)  Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.)  Subsequently, Senate Bill No. 775 (2021–2022 Reg. Sess.) expanded the scope of these ameliorative provisions to "clarif[y] that persons who were convicted of attempted murder or manslaughter" are permitted the same relief as those convicted of murder.  (Stats. 2021, ch. 551, § 1, subd. (a); accord, *People v. Arellano*, *supra*, 16 Cal.5th at p. 468, fn. 3.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has

---

[6] The felony-murder rule is not at issue in the instant appeal.

made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder or attempted murder conviction. (§ 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.)

## B.  Standard of Review

Because the trial court's review was based on a "cold record" and not live testimony, petitioner contends we should independently review the record to determine whether it supports a finding beyond a reasonable doubt that petitioner acted with intent to kill.

Our Supreme Court has confirmed that the denial of a section 1172.6 petition following an evidentiary hearing ordinarily is reviewed for substantial evidence unless the appeal involves a question of law. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*); accord, *People v. Njoku* (2023) 95 Cal.App.5th 27, 43.) Petitioner does not address *Reyes* but nonetheless argues, based in part on *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), that this principle does not apply where the underlying record relied on by the finder of fact is documentary.

As petitioner recognizes, every court to consider this argument has rejected it. (E.g., *People v. Underwood* (2024) 99 Cal.App.5th 303, 313; *People v. Njoku*, *supra*, 95 Cal.App.5th at p. 42; *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1109, review granted

Aug. 9, 2023, S280278; *People v. Oliver* (2023) 90 Cal.App.5th 466, 480; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232–233; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 590–591; *People v. Clements* (2022) 75 Cal.App.5th 276, 283, 302.) Moreover, our Supreme Court has rejected a similar argument in the context of a Proposition 36 petition for recall of sentence. (*People v. Perez* (2018) 4 Cal.5th 1055, 1066.) We agree with the analysis of these courts. The trial court's decision in *Vivar* involved predominately legal questions (*Vivar*, *supra*, 11 Cal.5th at p. 524), and "multiple factors with special relevance" in the specific context of section 1473.7 (*Vivar*, at p. 527). Meanwhile, the question at issue here is a question of fact. In this context, we " 'defer to the factual determinations made by the trial court,' regardless of 'whether the trial court's ruling[s are based] on oral testimony or declarations.' " (*Vivar*, at p. 528, fn. 7.)

Accordingly, substantial evidence review is the proper standard of review for the trial court's factual findings following a section 1172.6 evidentiary hearing. "Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Reyes*, *supra*, 14 Cal.5th at p. 988.)

## C. Analysis

Petitioner contends substantial evidence does not support a finding that he acted with intent to kill.[7] We disagree.

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) Here, video evidence showed petitioner and Garcia chasing, beating, and kicking

---

[7] Petitioner does not contest the sufficiency of the evidence to support the remaining elements of attempted murder.

Alejandro about the head and neck while Alejandro was either on the ground or attempting to escape. Garcia retrieved an object from another inmate and made stabbing motions at Alejandro. During and after this time, petitioner continued to beat Alejandro about the head and neck and, at one point, attempted to stomp on his head. Petitioner then put his arm around Alejandro's neck and pulled in a choking-type motion, while Alejandro struggled with petitioner in a large pool of blood. Petitioner did not stop until law enforcement responded to the altercation. The foregoing facts are sufficient to support the trial court's finding that petitioner harbored an intent to kill.

Petitioner contends the victim's injuries, which petitioner characterizes as superficial, were indicative of the amount of force used and suggest the force was not intended to kill. According to petitioner, this evidence could suggest that petitioner only intended to cause injury and had no expectation that he or his codefendant would cause the victim's death. While such inferences may be supported by the evidence, this argument merely asks us to reweigh the evidence, which we may not do. (*People v. Alexander* (2010) 49 Cal.4th 846, 917.)

Substantial evidence supports the trial court's finding that petitioner acted with intent to kill.

## DISPOSITION

The order denying the petition for resentencing is affirmed.


DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.

10.